989 F.2d 1134
 Loren DEMPSEY, a minor, suing By and Through her parents and
natural guardians, Lonney DEMPSEY and Pansy Dempsey; Lonney
Dempsey and Pansy Dempsey, individually,
Plaintiffs-Appellees, Cross-Appellants,
v.
UNITED STATES of America, Plaintiff-Appellant, Cross-Appellee.
 No. 92-2042.
 United States Court of Appeals,
Eleventh Circuit.
 April 30, 1993.
 
 Benjamin W. Beard, Asst. U.S. Atty., Pensacola, FL, William G. Cole and Edward R. Cohen, Appellate Staff, Civ. Div., Dept. of Justice, Washington, DC, for appellant.
 James F. McKenzie, Pensacola, FL, for appellees.
 Appeal from the United States District Court for the Northern District of Florida.
 Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and JOHNSON, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO ARTICLE 5, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION.
 
 
 2
 TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:
 
 
 3
 This case comes to the United States Court of Appeals for the Eleventh Circuit on appeal from the United States District Court for the Northern District of Florida. This case involves two questions of Florida law which are determinative of the cause, but unanswered by controlling precedent of the Supreme Court of Florida. We therefore certify these questions for resolution by the highest court of Florida.
 
 
 4
 On February 27, 1988, Pansy Dempsey, wife of Lonney Dempsey, Sr., an enlistee in the United States Air Force, gave birth to a baby girl at Eglin Air Force Base Hospital. The child, Loren, was born with severe breathing difficulties. An attempt to resuscitate her was unsuccessful because the tube meant to bring oxygen to the child's lungs was put down her esophagus instead. About fifty minutes later, the mistake was discovered and Loren was revived. Nevertheless, as the result of oxygen deprivation, she is now severely retarded. It appears that she will never walk or talk and will require care for the remainder of her life. Loren's parents have suffered the loss of a normal relationship with their child.
 
 
 5
 The magistrate judge to whom this case was assigned held the Government liable for Loren's injuries and awarded approximately $2.8 million to Loren for medical expenses, loss of earnings, and pain and suffering. The magistrate judge awarded the parents $1.3 million for the "loss of society and affection of their child." The Government appealed the award made to the parents. The parents appealed the magistrate judge's denial of damages for the loss of Loren's services.
 
 
 6
 On appeal, the dispute centers on the recovery available to the parents. The parties disagree about whether Florida law permits parents to recover for the loss of a child's society and affection when the child is severely injured, but does not die. They also disagree about whether parents may recover for the loss of an injured child's services. After careful review of Florida law, we conclude that these questions are unanswered by controlling precedent of the Supreme Court of Florida.
 
 
 7
 Although Florida law allows parents to recover for their mental pain and suffering from the wrongful death of a child, Fla.Stat. § 768.21(4) (1991), no statute provides them a remedy for "loss of their child's companionship, society and affections" when the child's injury does not lead to death. In the absence of a specific statute, Zorzos v. Rosen, 467 So.2d 305, 307 (Fla.1985), suggests that the Florida Supreme Court would choose to await explicit recognition by the Florida legislature of such a right before permitting recovery. Nevertheless, the decision in Yordon v. Savage, 279 So.2d 844 (Fla.1973), seems to permit similar awards in child injury cases. That case interpreted Wilkie v. Roberts, 91 Fla. 1064, 109 So. 225 (1926), as holding
 
 
 8
 that the parent ... of an unemancipated minor child, injured by the tortious act of another, has a cause of action in his own name for medical, hospital, and related expenditures, indirect economic losses such as income lost by the parent in caring for the child, and for the loss of the child's companionship, society, and services, including personal services to the parent and income which the child might earn for the direct and indirect benefit of the parent.
 
 
 9
 Yordon, 279 So.2d at 846. But see City Stores Co. v. Langer, 308 So.2d 621, 622 (Fla.Dist.Ct.App.) ("A parent can recover only his pecuniary loss as a result of injury to his minor child, and such loss was limited to two elements: (1) the loss of the child's services, and (2) medical expenses in effecting or attempting to effect a cure."), cause dismissed, 312 So.2d 758 (Fla.1975).
 
 
 10
 As to the second issue, the magistrate judge elected not to award damages to the parents for loss of their child's services, reasoning that, absent extraordinary income producing attributes, "the cost of maintaining [a child] to maturity would normally exceed the value of any services which might likely be rendered by the child to the parent." Record, vol. 3, no. 119, at 34 (citing Gresham v. Courson, 177 So.2d 33, 37 (Fla.Dist.Ct.App.1965)). While this logic seems unassailable in a wrongful death case, it is unclear whether the Florida Supreme Court would find it dispositive in an injury case.
 
 
 11
 We believe that the issues of Florida law raised by the parties in this appeal are appropriate for resolution by the highest court of Florida. We, therefore, certify the following questions:
 
 
 12
 1. DOES FLORIDA LAW PERMIT PARENTS TO RECOVER FOR THE LOSS OF A CHILD'S COMPANIONSHIP AND SOCIETY WHEN THE CHILD IS SEVERELY INJURED?
 
 
 13
 2. DOES FLORIDA LAW PERMIT PARENTS TO RECOVER FOR THE LOSS OF THE SERVICES OF A SEVERELY INJURED CHILD ABSENT EVIDENCE OF EXTRAORDINARY INCOME PRODUCING ABILITIES?
 
 
 14
 We do not intend the particular phrasing of these questions to limit consideration of the problems posed by the entire case. In order to assist the determination, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Florida.
 
 
 15
 IT IS SO ORDERED.